IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TANGELA M. THOMAS, § | |
| § | |
| *Plaintiff,* § | SA-24-CV-00684-FB |
| § | |
| vs. § | |
| § | |
| FRANK BISIGNANO, ACTING § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY,[1] § | |
| § | |
| *Defendant.* § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff's request for review of the administrative denial of her application for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff argues that the Administrative Law Judge ("ALJ") erred in determining her residual functional capacity ("RFC") with respect to her mental limitations, and that the mental RFC is not supported by substantial evidence.

The undersigned held a hearing in this case, at which counsel for both parties appeared via videoconference. After considering Plaintiff's Original Brief [#11], Defendant's Brief in Support of the Commissioner's Decision [#12], Plaintiff's Reply Brief [#13], the transcript

---

[1] Frank Bisignano is now Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (action survives regardless of any change in person occupying office of Commissioner of Social Security).

1

("Tr.") of the administrative proceedings [#5], the arguments of counsel at the hearing, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the undersigned concludes that substantial evidence does not support the ALJ's RFC determination as to Plaintiff's mental limitations regarding her ability to interact with others and to maintain concentration and pace in a work setting. The undersigned therefore recommends that the Commissioner's decision be **VACATED** and this case be **REMANDED** for further fact-finding consistent with this opinion.

## I. Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. Governing Legal Standard

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[2] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for

---

[2] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

the Commissioner, not the court, to resolve. *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III.  Procedural Background

Plaintiff Tangela M. Thomas filed her applications for a period of disability, DIB, and SSI in September 2021, alleging a disability onset date of August 17, 2021. (Tr. 225–56.) Plaintiff served as an ammunition specialist for the Army from 2000 to 2021 and has a 100 percent service-connected disability rating through the Veterans Administration ("VA"). (Tr. 257.) Plaintiff was 43 years old at the time she filed her applications and has a bachelor's degree in business management. (Tr. 303–04.)

The medical conditions upon which Plaintiff based her disability applications include PTSD and numerous physical impairments. (Tr. 302.) Although Plaintiff's written briefing

addresses both her mental and physical limitations, Plaintiff clarified at the Court's hearing that she is only challenging the ALJ's treatment of Plaintiff's mental limitations in this appeal. The undersigned has therefore limited the discussion in this report and recommendation to those portions of the record pertaining to Plaintiff's mental health and its effect on her capacity for sustained work.

Plaintiff supported her disability applications with two Adult Function Reports completed in late 2021, one by Plaintiff and another by a coworker. (Tr. 320–27, 335–45.) The third-party report emphasized that, due to her PTSD, Plaintiff struggles to get along with others, angers and frustrates easily, avoids social activities, and limits interactions to texting, talking on the phone, and video chats. (Tr. 324–25.) Plaintiff's coworker also described Plaintiff as having significant difficulties with memory, completing tasks, concentration, comprehension, focus, and handling stress, which according to the coworker, causes her to "completely shut down." (Tr. 325–26.) Plaintiff's own function report asserts similar limitations. Plaintiff stated in her report that she has difficulty concentrating and focusing on any task, completing activities due to difficulties with frustration tolerance, and understanding instructions. (Tr. 335, 342–45.) Plaintiff also explained that she mostly stays at home, struggles with loud noises and crowds, and avoids public places and social interactions. (Tr. 335, 342–45.)

SSA denied her applications for DIB and SSI initially on April 29, 2022, and again upon reconsideration on February 14, 2023. (Tr. 67–112.) Following the denial of her claim, Plaintiff requested an administrative hearing. (Tr. 264.) Plaintiff, her attorney, and a vocational expert attended the administrative hearing before ALJ Gordan Momcilovic on December 14, 2023, and provided testimony. (Tr. 35–66.) At the hearing, Plaintiff testified that her PTSD, depression, and anxiety are among her most debilitating health issues preventing her from working. (Tr. 47,

57.) Plaintiff explained that her PTSD prevents her from going to public places like concerts or the grocery store, and that she is particularly triggered by loud noises, crowds, and people walking behind her. (Tr. 57.) She also described her difficulties with attention, focus, especially in a competitive work setting, and completing even basic tasks like brushing her teeth, and relayed that she is easily overwhelmed and frustrated. (Tr. 58–61.) When asked if her mental health symptoms are improving with treatment, Plaintiff stated that she believes they are further deteriorating. (Tr. 60.)

The ALJ issued an unfavorable decision on January 5, 2024. (Tr. 14–28.) The ALJ found that Plaintiff meets the insured status requirements of the SSA through March 31, 2027, and applied the five-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 21, 2018, the alleged disability onset date. (Tr. 16–17.) At step two, the ALJ found Plaintiff has the following severe mental impairments: PTSD, major depressive disorder, and anxiety disorder. (Tr. 17–18.) At step three, the ALJ found that these impairments do not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations. (Tr. 79.) As part of the step three analysis, the ALJ evaluated Plaintiff's mental limitations and found her to have moderate limitations in three of the four areas of the psychiatric review technique ("PRT")[3] known as the Paragraph B criteria: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace. (Tr. 19–20.) In the fourth area, adapting or managing oneself, the ALJ found Plaintiff to have only mild limitations. (Tr. 20.)

---

[3] The PRT is the method used for evaluating mental impairments at all levels of the administrative review process. 20 C.F.R. § 404.1520a(c)(3).

5

Before reaching step four of the analysis, the ALJ found Plaintiff retains the RFC to perform light work with additional physical and mental limitations. As to Plaintiff's mental limitations, the ALJ found Plaintiff (1) can only occasionally interact with the general public and (2) can only understand, remember, and carry out detailed but not complex job instructions and work-related tasks. (Tr. 20–27.) At step four, the ALJ determined that Plaintiff is unable to perform her past relevant work as an ammunition specialist. (Tr. 27.) Then, considering Plaintiff's age, educational factors, work experience, and RFC, as well as the testimony of the VE, the ALJ found Plaintiff capable of performing other work in the national economy, namely that of an electronics worker, routing clerk, and assembler. (Tr. 28.) Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of the Act, and therefore not entitled to receive DIB or SSI. (*Id.*) Plaintiff requested review of the ALJ's decision, but the Appeals Council denied review on April 16, 2024. (Tr. 1–3.) Plaintiff thereafter filed the instant case, seeking review of the administrative determination.

## IV.  Analysis

Plaintiff makes three related arguments in asserting that the ALJ erred in determining her mental RFC. First, Plaintiff claims the ALJ selectively considered her medical records and overlooked evidence that supports a more restrictive mental RFC. Second, Plaintiff claims the ALJ failed to explain how his RFC findings adequately address Plaintiff's moderate limitations as to concentration, persistence, and pace and interacting with others. Third, Plaintiff contends the ALJ failed to address her ability to perform sustained work-related activity and consider her

"off-task" limitations.[4]  Plaintiff asserts that for all these reasons, the ALJ's RFC is not supported by substantial evidence, and remand is required for further consideration of the record.

An RFC determination is the most an individual can still do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe.  *Id.* § 404.1545(a)(1)–(3).  The relative weight given to the evidence contained in the record is within the ALJ's discretion.  *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam).  However, the ALJ's discretion is not boundless; he must still build a "logical bridge" between the medical evidence and the ultimate RFC determination.  *Price v. Astrue*, 401 Fed. App'x 985, 986 (5th Cir. 2010).  If the ALJ's stated reasons for reaching his conclusion could not be accepted by "a reasonable mind," there is not substantial evidence to support the ALJ's denial of benefits.  *Newton*, 209 F.3d at 452.  Furthermore, an unsupportable RFC determination may not be saved by post-hoc justifications offered by the Commissioner; "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  *Id.* at 455.

While the ALJ need not specifically discuss all the evidence of record, he cannot ignore evidence that does not support his decision or selectively rely only on evidence that supports his decision without making findings regarding the conflicting evidence.  *Jefferson v. Barnhart*, 356 F. Supp. 2d 663, 675 (S.D. Tex. 2004); *Armstrong v. Sullivan*, 814 F. Supp 1364, 1373 (W.D. Tex 1993).  By examining the ALJ's opinion as a whole, the Court must be assured that he has at

---

[4] The undersigned has not addressed Plaintiff's argument regarding any error related to her alleged off-task limitations.  The Fifth Circuit has specifically rejected the contention that an ALJ must articulate a separate finding that a claimant can maintain a job on a sustained basis.  *Castillo v. Barnhart*, 151 Fed. App'x 334, 335–36 (5th Cir. 2005).  And the undersigned has considered Plaintiff's alleged impairments as to sustaining concentration and pace, which are related to her assertion that she would be off-task for a significant portion of the workday.

7

least considered all the evidence in fashioning the ultimate RFC. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). An ALJ is not permitted to "pick and choose" only the evidence that supports his position. *Id.*

**A.     Relevant Mental-Health Evidence**

Plaintiff's mental-health records establish that she began exhibiting symptoms of depression, anxiety, and PTSD well before she stopped working for the Army. (Tr. 724, 933, 1234–1236.) Plaintiff was deployed to Iraq twice during her military career, in 2003 and 2005. (Tr. 963.) During her deployment, Plaintiff was frequently transported in helicopters while taking fire and was under constant attack and witnessed injuries and the deaths of fellow soldiers. (Tr. 962, 1189.) Additionally, Plaintiff was severely injured when she was shot in close proximity by a fellow servicemember in her platoon who was trying to hide a shotgun, resulting in shrapnel hitting her legs and arms. (Tr. 1046.) Plaintiff also experienced sexual harassment during her service from a supervising sergeant. (Tr. 1189.) Since that time, Plaintiff has reported at various appointments with mental-health providers that she struggles with severe anxiety when in public places, avoids people and crowds, is sensitive to loud noises, has an exaggerated startle response, and suffers from general anxiety and depression. (Tr. 962, 1046.)

Plaintiff first sought mental-health treatment in 2019 at the VA Behavioral Health Clinic due to issues with concentration, job performance, and anger management and was treated with biofeedback therapies and psychotropic medications. (Tr. 724–27, 933–38, 1234–36.) After she stopped working in August 2021, she had a psychiatry consultation with VA psychiatrist Samuel Shapiro in December of that year. (Tr. 1043–54.) At this appointment, Plaintiff described her PTSD symptoms, including her fear of being around others and in public places, difficulty sleeping, and impaired activities of daily living due to her depression. (Tr. 1043–50.) Dr.

Shapiro performed a mental status examination and found that Plaintiff meets the symptom criteria for chronic PTSD and major depressive episodes and prescribed Plaintiff with sertraline and psychotherapy.  (Tr. 1054.)  Plaintiff's self-report of her PTSD and depressive symptoms to Dr. Shapiro were consistent with statements in the two Adult Function Reports completed in October 2021 to support her disability applications—that Plaintiff suffers from issues with concentration and focus, feelings of overwhelm, interacting with others, handling stress, and being in crowds or around loud noises.  (Tr. 325, 335, 345.)

Licensed clinical social worker ("LCSW") James Rail saw Plaintiff for several additional appointments in December 2021 and January 2022 to treat her chronic PTSD and major depressive disorder.  (Tr. 1189–90, 2334–35.)  Rail noted that Plaintiff was cooperative during her appointments and exhibited a congruent affect and euthymic mood, as well as logical and goal-oriented thought processes.  (Tr. 1189–90, 2334–35.)  Rail also confirmed that Plaintiff nonetheless continued to struggle with PTSD symptoms and depression and recommended meditation to help her cope with her poor mental health in addition to medication management.  (Tr. 1189–90, 2334–35.)

In March 2022, Plaintiff saw VA psychologist Mark Adams for her PTSD, depression, and anxiety.  (Tr. 2003.)  Dr. Adams noted that Plaintiff was cooperative and alert with normal perception and intact memory but presented with a depressed mood.  (Tr. 1067, 1131.)  During this appointment, Plaintiff confirmed that she was continuing to struggle with nightmares, getting along with others, feeling numb and detached, and was constantly on guard, easily startled, and hypervigilant in public spaces.  (Tr. 2003, 2005.)  Plaintiff canceled or no-showed for several additional appointments in the spring of 2022.  (Tr. 1104.)

Plaintiff underwent a psychological consultative examination on January 14, 2022, with Monica Hernandez, Ph.D. (Tr. 961–65.) Plaintiff presented at the examination with a flat affect and somber mood but was cooperative and able to establish rapport with Dr. Hernandez. (Tr. 963.) During the examination, Plaintiff reported to Dr. Hernandez that she has been suffering from PTSD since 2003 after her first deployment to Iraq while serving in the Army. (Tr. 962.) Plaintiff explained that during her deployment she witnessed injuries and deaths of fellow soldiers, experienced her own injuries during service, and suffers from nightmares and flashbacks related to these events. (*Id.*) Plaintiff also reported that she struggles with anxiety, restlessness, excessive worry, and fear of the worst happening, especially when out in public. (*Id.*) For this reason, she avoids people, crowds, and public settings. (*Id.*) Regarding her ability to focus and concentrate, Plaintiff reported to Dr. Hernandez that she experiences mood swings, anger, low motivation, low energy, distracts easily, and has a difficult time staying on task. (*Id.*) Although Plaintiff has been receiving psychiatric treatment since 2019, and has been prescribed medications for management of her depression and anxiety, she relayed to Dr. Hernandez that she believes her symptoms are getting worse, rather than improving. (*Id.*)

Upon examination, Dr. Hernandez found Plaintiff to be oriented as to person, place, time, and situation. (Tr. 964.) Plaintiff's remote memory was adequate, and her immediate memory was fair, but Dr. Hernandez needed to repeat questions and instructions for Plaintiff to understand them, and Plaintiff was not able to recall three words after five minutes. (*Id.*) Dr. Hernandez nonetheless characterized Plaintiff as having "minimal difficulties" with attention and concentration. (*Id.*) Overall, Dr. Hernandez gave Plaintiff a prognosis of "guarded" and described her as having poor insight into her psychological symptoms, as well as poor coping skills, noting that Plaintiff believes her symptoms have been getting worse over time. (Tr. 965.)

In terms of Plaintiff's functional capacity, Dr. Hernandez found Plaintiff capable of understanding, carrying out, and remembering instructions but unable to sustain concentration and persist in work-related activity at a reasonable pace due to difficulties coping with the pressure of a competitive work setting. (*Id.*) In terms of social interaction, Dr. Hernandez found Plaintiff able to maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public. (Tr. 962.) Dr. Hernandez did not explain the basis for her finding as to Plaintiff's social capabilities; the only part of her report addressing Plaintiff's social limitation is a comment that Plaintiff "has lost interest in socializing with others" but "has a good social support system that includes her family." (*Id.*)

**B.    ALJ's Mental RFC Finding**

Plaintiff argues that the ALJ failed to build a logical bridge between the mental-health evidence and his ultimate conclusions. The undersigned agrees with Plaintiff that the ALJ's RFC findings, particularly as to Plaintiff's ability to interact with others and sustain concentration, persistence, and pace, are not supported by substantial evidence.

    **i.    Interacting with Others**

The ALJ found Plaintiff to have no limitations in interacting with coworkers and supervisors but to be limited to only occasional interaction with the general public. (Tr. 20.) The ALJ's discussion of the mental-health evidence regarding Plaintiff's ability to interact with others is sparse, and yet there are significant references in Plaintiff's testimony and mental-health records of serious social limitations stemming from her service-related PTSD. Having reviewed the entirety of the ALJ's opinion, the undersigned is not persuaded that the ALJ adequately considered the social component of Plaintiff's PTSD diagnosis and whether it functionally limits her ability to work with others.

The ALJ first addressed Plaintiff's ability to interact with others at step three in evaluating the Paragraph B criteria. (Tr. 19.) At step three, the ALJ found Plaintiff to have moderate limitation in this functional area. (*Id.*) Although a step three finding regarding the Paragraph B criteria is not an RFC assessment, the Court must read an ALJ's decision as a whole to determine whether it is supported by substantial evidence and whether the ALJ creates a logical bridge between the evidence and his conclusions. *See* Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).

In support of his Paragraph B finding, the ALJ only cited two medical records—a VA mental-health exam from August 2020 (one year before the alleged disability onset date) and treatment notes from a VA *chiropractic* appointment in February 2021 (approximately six months before she stopped working). (Tr. 19–20.) The entirety of the ALJ's discussion as to this evidence is as follows:

> In interacting with others, the claimant has a moderate limitation. On March 9, 2022, the claimant's mood was depressed. The claimant presented for an exam on August 25, 2020 (Ex. 2F/217). She had reported "decreased motivation". Her mood was euthymic. Her speech was normal (Ex. 2F/219-220). Treatment notes from February 2021 show the claimant denied feelings of sadness or depression (Ex. 11F/254).

(*Id.*)

Every aspect of the ALJ's discussion here is confounding. The ALJ found Plaintiff to suffer from the severe impairments of depression, anxiety, and PTSD at step two. (Tr. 17.) By noting that Plaintiff denied feelings of sadness or depression at an appointment, was the ALJ questioning whether his step two assessment was accurate? Why was the ALJ emphasizing Plaintiff's decision not to discuss her mental-health status at a single chiropractic appointment six months before the alleged disability onset date, despite other consistent evidence in the

12

record that Plaintiff was suffering from mental impairments throughout the relevant period? More importantly, how does this medical record from the chiropractor bear on Plaintiff's ability to interact with others, which is predominantly affected not by her depression but by her chronic service-related PTSD?  Similarly, what do the notations from August 2020 regarding Plaintiff's report of decreased motivation, normal speech, and euthymic mood have to do with her ability to interact with coworkers, supervisors, and the general public?  None of these records pertain to interacting with others.  And why, if the ALJ was dismissive of Plaintiff's symptoms, did he ultimately find her to have moderate limitations in the ability to interact with others?  It is unclear what evidence the ALJ considered and what reasoning he undertook to reach his conclusion regarding Plaintiff's moderate limitation in her ability to interact with others, and the minimal evidence he cited does not support his conclusion.

   The ALJ's discussion of Plaintiff's mental-health limitations in the section of his opinion devoted to the RFC does not provide sufficient reassurance that the ALJ considered the evidence in the record regarding Plaintiff's social limitations.  Although the ALJ acknowledged that Plaintiff has a PTSD diagnosis, nowhere in his opinion does he discuss or address the specific effect of Plaintiff's PTSD on her capacity to interact with others.  He merely notes the opinions of the SAPCs at the initial and reconsideration levels and Dr. Hernandez at her consultative examination regarding the ability to interact with others without any substantive discussion.  (Tr. 26–27.)  A closer look at these opinions and the ALJ's treatment of them raises additional questions.

    At the initial level of review, SAPC Bryon T. Pack, Psy.D., found Plaintiff could interact adequately with coworkers and supervisors but may show limited tolerance for frequent contact with the general public and may function best with limited social demands.  (Tr. 76, 86.)  The

ALJ acknowledged the finding of Dr. Pack with respect to interacting adequately with coworkers and supervisors (along with a long list of other mental RFC findings) and then rejected the opinion overall as unpersuasive for lack of consistency with objective findings. (Tr. 26.) The ALJ did not, however, identify specific objective findings regarding Plaintiff's social capabilities that contradict Dr. Pack's assessment, aside from noting that Plaintiff had cooperative behavior at an appointment with LCSW James Rail, a treating source. (*Id.*)

The ALJ purported to adopt the opinion of the reconsideration-level SAPC, Robert B. White, Ph.D., finding his overall opinion generally persuasive. (Tr. 26–27.) But his opinion was not consistent with Dr. White's findings on Plaintiff's social limitations. Dr. White found Plaintiff generally able to interact appropriately with others without any distinction between the public, coworkers, and supervisors. (Tr. 94, 98, 106, 110.) The ALJ found Plaintiff to have no limitations in interacting with coworkers and supervisors but to be limited to only occasional interaction with the general public. (Tr. 20.) As noted, Dr. Hernandez, like Dr. White found Plaintiff capable of maintaining effective social interaction on a consistent basis with supervisors, coworkers, and the public. (Tr. 962.) Although the ALJ stated that he found Dr. Hernandez's overall opinion on Plaintiff's mental capacity to be only partially persuasive, he did not discuss any evidence regarding social interaction or Plaintiff's PTSD diagnosis in his analysis of Dr. Hernandez's opinion. The only evidence the ALJ discussed that even arguably relates to social limitations is that Plaintiff made good eye contact during appointments and was able to establish rapport and interact with the examiner. (Tr. 25.)

Although the opinions of Dr. Hernandez and Dr. White do provide some evidentiary support for the ALJ's ultimate RFC regarding Plaintiff's limitations social interaction, the ALJ's opinion as a whole is devoid of any discussion that acknowledges Plaintiff's PTSD and its

14

potential social implications, harmonizes the evidence on Plaintiff's documented problems with interacting with others, or distinguishes Plaintiff's capacity in interacting with the public versus coworkers and supervisors. Ultimately, it is not clear from reading the ALJ's opinion that he considered the evidence on Plaintiff's PTSD and its effect on her social interactions, particularly in light of his citations to irrelevant evidence and illogical findings at step three. *See Loza*, 219 F.3d at 393. There is no discussion or explanation to create the essential logical bridge between the evidence and the ALJ's RFC findings as to Plaintiff's social limitations.

### ii.     Concentration, Persistence, and Pace

The ALJ's step three discussion and treatment of Plaintiff's ability to concentrate, persist, or maintain pace is equally confusing. The ALJ found Plaintiff to have moderate limitations in concentration, persistence, and pace at step three. (Tr. 20.) The entirety of the ALJ's analysis of this category of the Paragraph B criteria is as follows:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. On August 25, 2020, the claimant's attention was normal. She had no hallucinations or delusions. Her behavior was cooperative. She was assessed with adjustment disorder with depressed mood. She had no memory or orientation impairment (Ex. 2F/220).

(Tr. 20.) Again, in this paragraph, the ALJ references only *one* mental-health treatment record —the same August 2020 VA appointment from a year before the disability onset date that he cited in his discussion of Plaintiff's social limitations. (*Id.*) Aside from reciting notations from the VA records, the ALJ does not explain how the records from a single appointment give rise to his conclusion that Plaintiff has a moderate limitation in her ability to concentrate, persist, or maintain pace in a work-related setting.

The ALJ also engages in only a cursory discussion of a small portion of the evidence in the record regarding Plaintiff's ability to sustain concentration and pace in the discussion of the

15

opinion devoted to the mental RFC.  The ALJ's limited analysis does not demonstrate that he considered or even accurately summarized the relevant evidence.

The record reflects that Dr. Hernandez, the consultative examiner, found Plaintiff unable to sustain concentration and persist in work-related activity at a reasonable pace or cope with the pressures of a competitive work setting.  (Tr. 965.)  Although the ALJ acknowledged this opinion, he rejected it, stating that it was not supported by Dr. Hernandez's notes or consistent with the overall record.  (Tr. 25.)  The ALJ explained that Dr. Hernandez witnessed only "minimal difficulties" in Plaintiff's abilities with respect to attention and concentration: found her active and cooperative during the exam; her remote memory adequate and immediate memory fair; and her to exhibit logical and goal-directed thinking.  (Tr. 25, 965.)  Yet the ALJ misquoted Dr. Hernandez's evaluation as to Plaintiff's short-term memory, stating that Dr. Hernandez did *not* need to repeat questions and instructions for Plaintiff to understand.  (Tr. 23.)  The opposite is true.  Dr. Hernandez specifically noted that she *did* need to repeat instructions to Plaintiff and that Plaintiff was *not* able to recall three words after five minutes or repeat five numbers backwards.  (*Id.*)  Plaintiff's inability to follow instructions during the consultative examination is significant support for her consistent claims for a period of years that she struggles with focus and concentration that the ALJ appears not to have considered.  Difficulties with focus and concentration were among Plaintiff's chief and most consistent complaints throughout her mental-health records.  (Tr. 61, 325, 335, 345, 962, 964, 1236.)

The undersigned acknowledges that both of the SAPCs found Plaintiff capable of concentrating for extended periods of time.  (Tr. 77, 87, 98, 110.)  Thus, there is some evidentiary support in the medical opinions of record for the ALJ's findings as to Plaintiff's abilities as to concentration, persistence, and pace.  However, merely parroting a medical opinion

16

without adequate reasoning to ensure the Court that the all evidence in the record was considered cannot constitute substantial evidence; no "reasonable mind" would read the ALJ's opinion as a whole and find it "adequate to support" the conclusions found therein on the given administrative record. *See Villa*, 895 F.2d at 1021–22.

Finally, as related to Plaintiff's mental-health symptoms generally, the Commissioner emphasizes in his brief that Plaintiff was on medications, which were helping with her depression. (Tr. 2003.) The ALJ in his opinion did refer to a single statement by Plaintiff at a mental status exam in 2022 that her medication was "helpful" but that she did not want to be on medications her whole life. (Tr. 24.) But nowhere does the ALJ acknowledge Dr. Hernandez's finding that her prognosis was guarded due to her poor coping skills or Plaintiff's statements at the ALJ's hearing and in her exam with Dr. Hernandez that her mental condition has not improved and rather deteriorated even with medication. (Tr. 965.)

These errors were not harmless. An error is not harmless if it affected Plaintiff's substantial rights and the outcome of the proceedings. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). *See also Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err."). The VE testified at the ALJ's hearing that a person who is unable to cope with the pressures of a competitive work setting or to sustain concentration and pace would not be able to remain employed in any job. (Tr. 64.) The VE testified similarly as to a person with difficulties managing her symptoms of anxiety and depression, such that she experienced one or two outbursts of needing to leave the workstation. (*Id.*) On this record, had the ALJ imposed more restrictive mental limitations in the RFC, he could have found Plaintiff disabled. Accordingly, remand is required for further assessment of the mental-health evidence, with

particular focus on Plaintiff's PTSD and how it affects her ability to interact with coworkers, supervisors, and the general public, as well as her limitations as to concentration, persistence, and pace. In light of these findings, the Court need not consider Plaintiff's other arguments regarding the ALJ's mental RFC findings.

## V. Conclusion

Based on the foregoing, the undersigned finds that substantial evidence does not support the ALJ's mental RFC regarding Plaintiff's ability to interact with others and maintain concentration, persistence, and pace. The undersigned therefore recommends that the Commissioner's decision finding Plaintiff not disabled be **VACATED** and this case **REMANDED** for further findings and proceedings in accordance with this opinion.

## VI. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985);

*Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 21st day of August, 2025.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE